HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHERINE ANNE LAFRENIERE,

Plaintiff,

v.

MERIDIAN SCHOOL DISTRICT,

Defendants.

CASE NO. 2:24-cv-01691-RAJ

ORDER

## I.    INTRODUCTION

THIS MATTER comes before the Court on Defendants Meridian School District (the "District"), James Everett, and Kurt Harvill's Motion for Summary Judgment, Dkt. # 61.  Also pending before the Court are Plaintiff Katherine Anne LaFreniere's Motion to Deem Requests for Admission Admitted, Dkt. # 72, Motion to Modify the Scheduling Order, Dkt. # 73, and Motion for Relief from Scheduling Order Deadlines, Dkt. # 76.  The Court has reviewed the motions, the submissions in support of and in opposition to the motion, and the balance of the record.  For the reasons set forth below, the Court **GRANTS** the District's Motion for Summary Judgment and **DENIES** Ms. LaFreniere's motions.

ORDER – 1

## II.    BACKGROUND

### A.    Proclamation Requiring COVID-19 Vaccination

In August 2021, in the wake of the COVID-19 pandemic, then-Governor Inslee issued Proclamation 21-14.1 (the "Proclamation").  The Proclamation prohibited "[a]ny Worker from engaging in work for the operator of an Educational Setting after October 18, 2021 if the Worker has not been fully vaccinated against COVID-19."  Dkt. # 63-1 at 5. The Proclamation also prohibited "[a]ny operator of an Educational Setting from permitting a Worker to engage in work for the operator after October 18, 2021 if the Worker has not been fully vaccinated against COVID-19 and provided proof thereof[.]" *Id.*  It is uncontested that Ms. LaFreniere was a "Worker" and the District an "operator of an Educational Setting" as defined in the Proclamation.[1]

The Proclamation provided for exemptions from the vaccination requirement for individuals "unable to do so because of a disability or if the requirement to do so conflicts with their sincerely held religious beliefs, practice, or observance."  *Id.* at 6.  The Proclamation required covered entities to provide certain disability-related reasonable accommodations and sincerely held religious belief accommodations unless doing so "would cause undue hardship."  *Id.*  Prior to providing a disability-related reasonable accommodation, covered entities were required, to the extent permitted by law, to "obtain from the individual requesting the accommodation documentation from an appropriate health care or rehabilitation professional stating that the individual has a disability that necessitates an accommodation and the probable duration of the need for the accommodation."  *Id.* at 6–7.  Prior to providing a sincerely held religious belief accommodation, covered entities were required, to the extent permitted by law, to "document that the request for an accommodation has been made and include a statement

---

[1] Under the Proclamation, "Worker" includes "A person engaged to work as an employee, on-site volunteer, or on-site contractor for a State Agency, an operator of an Educational Setting, or an operator of a Health Care Setting[.]"  *Id.* at 9.  "Educational Setting" includes "[a]ll public schools" and "public school districts."  *Id.* at 12.

ORDER – 2

in the document explaining the way in which the requirements of this order conflict with the sincerely held religious belief, practice, or observance of the individual." *Id.* at 7. The Proclamation prohibited covered entities from providing accommodations that they knew were "based on false, misleading or dishonest grounds or information" or "based on the personal preferences of the individual and not on an inability to get vaccinated because of a disability or a conflict with a sincerely held religious belief, practice, or observance." *Id.* The Proclamation also prohibited covered entities from providing accommodations "[w]ithout conducting an individualized assessment and determination of each individual's need and justification for an accommodation; i.e., 'rubberstamping' accommodation requests." *Id.*

**B.    The District's Implementation of the Proclamation**

The two individual defendants in this case are Mr. Harvill and Mr. Everett. Mr. Harvill is the Assistant Superintendent for the District. Dkt. # 63 ¶ 1. Mr. Everett is the Superintendent for the District. Dkt. # 63-13.

In support of their Motion for Summary Judgment, Defendants submit a declaration from Mr. Harvill. Dkt. # 63. In the declaration, Mr. Harvill explains that "[t]o comply with the Proclamation, the District worked with legal counsel to develop medical and religious accommodation request forms." *Id.* ¶ 6. The form was "the first step to granting an accommodation and exemption from the vaccination mandate." *Id.* Mr. Havill reviewed completed forms. *Id.* If the completed form "provided sufficient information to comply with the Proclamation," then Mr. Harvill met with the individual "to identify appropriate safety measures" to follow. If, on the other hand, the completed form "did not contain sufficient information to comply with the Proclamation," Mr. Harvill would "communicate with the individual, either in person, by phone, or by email, to discuss and obtain the missing information." *Id.* ¶ 7.

On August 27, 2021, Mr. Harvill sent all District staff an email regarding the Proclamation and vaccination requirement. *Id.* ¶ 9. The email required staff to complete

ORDER – 3

a training module, which in turn provided staff with the exemption forms. *Id.* ¶ 9; Dkt. # 63-2. The email also attached a "Frequently Asked Questions" document ("FAQs"). In relevant part, the FAQs explained that to obtain a religious exemption, employees must "complete the form provided by their school district and/or actively participate in the interactive accommodation process with a Human Resources representative." Dkt. # 63-2 at 8. In addition, the FAQs explained that the Proclamation required "employees seeking a religious exemption to explain the way in which the requirements of the order conflict with their sincerely held religious belief, practice, or observance." *Id.* Finally, the FAQ stated that employees "who do not provide proof of vaccination or a medical or religious exemption will be subject to non-disciplinary dismissal from employment for failing to meet the qualifications of the job." *Id.* Mr. Harvill sent follow-up emails regarding the vaccination requirement and exemptions process on September 8, 2021 and September 24, 2021. Dkt. # 63 at ¶¶ 10–11; Dkt. # 63-3; Dkt. # 63-4.

**C.   Ms. LaFreniere's Exemption Requests and Termination**

Ms. LaFreniere was the Director of Transportation at the District. Dkt. # 63 ¶ 12. On or around September 1, 2021, she sent to the District a 13-page document titled "Affidavit/Declaration of Truth" and "Statement of Medical and/or Religious Exemption. *Id.*; Dkt. # 63-5. The affidavit stated: "I am legally exempt from taking vaccines, wearing any face covering, viral testing, temperature testing or inoculations." Dkt. # 63-5 at 3. It also stated: "My religious convictions or medial [sic] conditions are protected by the Constitutional of United States of America" and several other laws. *Id.* The affidavit does not appear to identify *what* religious conviction or medical condition prevented Ms. LaFreniere from complying with the vaccination requirement. On September 3, 2021, Mr. Harvill responded to Ms. LaFreniere by email. Dkt. # 63-6. He acknowledged receipt of her affidavit, informed her it was not sufficient to qualify her for an exemption, reminded her of the District's exemption process, and directed her to the exemption forms. *Id.*

ORDER – 4

On or around September 21, 2021, Ms. LaFreniere sent a 17-page affidavit "challenging the District's authority to require her to provide the basis for any requested exemption." Dkt. # 63 ¶ 14. On September 30, 2021, Mr. Harvill sent another email to Ms. LaFreniere. In the email, he explained the "two affidavit letters we have received from you did not provide us with the information we need in order to be able to exempt you from the Governor's proclamation." Dkt. # 63-7 at 2. He again asked Ms. LaFreniere to complete the District's exemption form to seek an exemption. *Id.*

On October 1, 2021, Ms. LaFreniere submitted a religious accommodation request form. Dkt. # 63-8. Instead of providing information regarding her religious belief, however, Ms. LaFreniere stated in response to every question on the form: "The constitution protects me from answering any questions that you have about my religion therefore my answer is I am complying to your request to fill out a religious questionnaire under duress." Dkt. # 63-8 at 2. On October 5, 2021, Mr. Harvill sent an email to Ms. LaFreniere stating: "For an exemption to be granted, you would need to describe <u>what</u> your religious belief is that forms the basis for an exemption and/or <u>how</u> your religious belief conflicts with you receiving a COVID-19 vaccination. You did not provide the information requested to determine if an exemption could be granted." Dkt. # 63-9 at 2 (emphasis in original).

On October 12, 2021, Mr. Harvill attended an informal hearing with Ms. LaFreniere to discuss her request for a religious exemption. Dkt. # 63 ¶ 18. The meeting was originally scheduled to take place in the District's Professional Development room, but was moved to the Bus Garage Bay to ensure social distancing because Ms. LaFreniere's pastor and elder, who accompanied her, refused to wear a mask. *Id.* During the hearing, Ms. LaFreniere again repeated her position that she is not required to explain her religious beliefs. *Id.* ¶ 19; Dkt. # 63-11.

On October 18, 2021, Ms. LaFreniere submitted a second religious accommodation form. Dkt. # 63-12. In this form, she stated her "religious beliefs are private rights" and

ORDER – 5

"therefore exempt from disclosure to you, the government or any infringing party." *Id.* at 3. In response to questions regarding how her religious belief conflicts with the vaccination requirement, she stated "N/A" or "non [sic] of these are applicable." *Id.* at 2.

On October 21, 2021, in a letter signed by Mr. Everett, the District informed Ms. LaFreniere of her termination based on her failure to comply with the vaccination mandate or obtain an exemption. Dkt. # 63-13. According to Mr. Harvill's declaration, the District granted exemptions to 10–15% of the staff. Dkt. # 63 ¶ 6. Ms. LaFreniere "was the only District employee who failed to provide the basis for her request for a religious exemption." *Id.*

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Id.* If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Soremekun*, 509 F.3d at 984. Credibility determinations and the weighing of the evidence are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255.

ORDER – 6

## IV.  DISCUSSION

Ms. LaFreniere asserts the following claims:  (1) count one: violation of First Amendment right to free exercise of religion; (2) count two: violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (3) count three: violation of Fourteenth Amendment procedural due process; (4) count 4: violation of Fourteenth Amendment equal protection; (5) count five: violation of substantive due process; and (6) count six: violation of Washington Law Against Discrimination ("WLAD"); (7) count seven: violation of Washington State Constitution; and (8) count eight: municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Dkt. # 6 at 11–20.  The Amended Complaint does not clearly identify which claims are asserted against which defendants, but construing the *pro se* pleading liberally, the Court will treat all claims as asserted against all Defendants.  In addition, the Amended Complaint's caption indicates Mr. Harvill and Mr. Everett are only sued in their official capacity, although another section of the Amended Complaint states they are sued in both their "official and individual capacities for actions taken under color of state law."  *Id.* at 1, 9.  Again construing the pleading liberally, the Court will analyze claims against Mr. Harvill and Mr. Everett in both their official and individual capacities.  For the reasons discussed below, Defendants are entitled to summary judgment on all claims.

### A.    Ms. LaFreniere's Surreply

As a threshold matter, after the completion of briefing on Defendants' Motion for Summary Judgment, Ms. LaFreniere filed a document titled "Plaintiff's Opposition to Defendants' Motion for Summary Judgment; Objection to Note for Calendar; And Motion to Strike Defendants' Reply."  Dkt. # 70.  The Court construes the filing as a surreply to the Motion for Summary Judgment.

Under the District's Local Civil Rules, a party "may file a surreply requesting that the court strike" " material contained in or attached to a reply brief."  LCR 7(g).  The surreply "shall be strictly limited to addressing the request to strike."  *Id.*  "Extraneous

ORDER – 7

argument or a surreply filed for any other reason will not be considered." *Id.* "A surreply is not an opportunity for rebuttal." *Thompson v. Seattle Pub. Sch.*, No. 25-cv-468, 2026 WL 1025392, at *1 (W.D. Wash. Mar. 25, 2026).

Here, Ms. LaFreniere's surreply contains extraneous arguments not permitted under Local Civil Rule 7(g) or otherwise by leave of the Court. *See* Dkt. # 70 at 1–12. The Court will not consider those arguments in this order.

The surreply also contains a request to strike Defendnats' reply brief. Ms. LaFreniere asks the Court to strike the reply because (1) Defendants filed the reply brief one day *before* the noting date; (2) the reply raises new arguments; and (3) "counsel's credential demand . . . remains unresolved." *Id.* at 13. Under the Local Civil Rules, reply briefs must be "filed and received by the opposing party *no later than* 21 days after the filing date of the motion." LCR 7(d)(3) (emphasis added). Filing the reply brief early does not run afoul of Rule 7(d)(3) and provides no basis to strike the filing. Next, the Court does not find that Defendants' reply brief raises new arguments and Ms. La Freniere fails to identify any purported new arguments. Finally, the Court again rejects Ms. LaFreniere's arguments regarding counsel's legal credentials. *See* Dkt. # 57 at 3 (order directing Ms. LaFreniere "to refrain from filing any further motions relating to counsel's legal credentials."). In sum, the request to strike is denied.

**B.    Section 1983 Claims Against the District and Against the Individual Defendants in Their Official Capacity (Counts 1, 3, 4, 5, 8)**

Defendants argue Ms. LaFreniere's § 1983 claims based on *Monell* liability fail because "the District was enforcing the Governor's Proclamation, not an internal policy created and adopted by the District." Dkt. # 61 at 10. Ms. LaFreniere argues *Monell* liability applies because the "District's policy choices—designating an untrained evaluator, adopting a form that interrogated employees about the specifics of their faith, and providing no criteria for evaluating sincerity—are attributable to the District, not to the Governor." Dkt. # 65 at 10. The Court agrees with Defendants.

ORDER – 8

"A litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992). "Municipalities and other local governing bodies such as school districts may be held liable under § 1983 where a plaintiff shows that 'execution of a government's policy or custom . . . inflict[ed] the injury." *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1154 (9th Cir. 2025) (quoting *Monell*, 436 U.S. at 691, 694). "A municipality may be held liable 'only for its own violations of federal law.'" *Wilkins v. Herron*, No. 24-80, 2024 WL 5200177, at *2 (9th Cir. Dec. 23, 2024) (quoting *Los Angeles County v. Humphries*, 562 U.S. 29, 36 (2010)). In addition, the "municipal policy or custom must constitute a 'deliberate choice to follow a course of action . . . made from among various alternatives." *Id.* (quoting *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021)).

In *Wilkins*, the Ninth Circuit affirmed the dismissal of *Monell* claims against a school district under similar circumstances. There, a former public school teacher alleged the school district "violated his constitutional rights by enforcing Oregon's regulatory vaccine and mask mandates for public school employees." *Id.*, at *2. It was undisputed, however, that "state laws required school employees to be vaccinated and to wear masks" and "those laws were binding on the School District." *Id.* Based on this undisputed fact, the Ninth Circuit found the plaintiff failed to plead *Monell* liability because his alleged injuries were not "traceable to any policy or custom of the School District, as opposed to state law." *Id.*

Here, like in *Wilkins*, Ms. LaFreniere's injuries are not traceable to any policy or custom of the District. Rather, her termination was a direct result of the Proclamation, which was binding on the District. Her arguments to the contrary are unpersuasive. First, the Court observes that Ms. LaFreniere did not submit any exhibits or other evidence to support her assertions that the District designated an "untrained evaluator," adopted a form that "interrogated employees about the specifics of their faith," and provided "no criteria

ORDER – 9

for evaluating sincerity." *See* Dkt. # 65 at 10.[2] "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Thus, the Court disregards Ms. LaFreniere's unsupported assertions.

Second, and more importantly, these assertions do not undermine the District's position. The Proclamation prohibited the District from employing anyone who was not vaccinated against COVID-19 unless approved for an exemption. Dkt. # 63-1 at 5–6. The Proclamation further required the District to conduct an "individualized assessment and determination" of exemption requests, and for religious exemptions, to document "the way in which the requirements of this order conflict with the sincerely held religious belief, practice, or observance of the individual." *Id.* at 7. The Proclamation explicitly prohibited "rubberstamping" accommodation requests. *Id.* Ms. LaFreniere's repeated refusal to explain her sincerely held religious belief and how that belief conflicted with the vaccination requirement left the District with no choice but to terminate her employment. Under the plain terms of the Proclamation, the District could not grant her exemption request because it had no information to conduct an "individualized assessment and determination" of her request. Without an approved exemption, it could not continue her employment. The District had no discretion in the matter. Ms. LaFreniere complains that the District designated an "untrained evaluator" and used improper exemption forms and criteria, but no amount of training or improved process could remedy the fundamental issue that the District did not have the most basic information to evaluate her exemption request. Thus, § 1983 claims against the District are dismissed.

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991)

---

[2] Indeed, her assertion that the District's forms "interrogated employees about the specifics of their faith" is flatly contradicted by the existing record. *See* Dkt. # 63-8 (request form); Dkt. # 63 ¶ 19 ("This was not a rigorous review of anyone's religious tenets but merely ensuring that the person provided a basis for their request that complied with the requirements of the Proclamation.").

ORDER – 10

(quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Accordingly, § 1983 claims against Mr. Harvill and Mr. Everett in their official capacity are dismissed for the same reasons.

### C.    Section 1983 Claims Against the Individual Defendants in Their Individual Capacity (Counts 1, 3, 4, 5)

Next, Ms. LaFreniere asserts § 1983 claims against Mr. Harvill and Mr. Everett in their individual capacity for violation of (1) the free exercise clause; (2) procedural due process; (3) equal protection; and (4) substantive due process.  Defendants argue Mr. Harvill and Mr. Everett are entitled to qualified immunity.  The Court agrees.[3]

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' which, in certain circumstances, shields government officials from civil liability for actions taken in the course of their duties."  *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  To overcome qualified immunity, the plaintiff must show the defendant "(1) 'violated a federal statutory or constitutional right' and (2) 'the unlawfulness of their conduct was clearly established at the time.'"  *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023) (quoting *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022)).  These elements may be analyzed "in any order." *Id.*  To show that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Additionally, the right must have been established "at the time of the alleged violation."  *Moran v. State*, 147 F.3d 839, 844 (9th Cir. 1998).  The clearly established right should not be defined "at a high level of generality."  *Moore*, 83 F.4th at 750 (quoting *Ballentine*, 28 F.4th at 64).

---

[3] Because the Court resolves these claims based on qualified immunity, it will not reach Defendants' argument regarding personal participation.  *See* Dkt. # 61 at 8–9.

ORDER – 11

### i.      No Clearly Established Right

Ms. Freniere fails to meet her burden of identifying a clearly established right. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000) ("Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'"). She argues that "the right to free exercise of religion and to be free from religious discrimination in employment has been clearly established for decades." Dkt. # 65 at 8. This, however, is exactly the "high level of generality" that must be avoided when identifying the clearly established right. *Moore*, 83 F.4th at 750. She identifies no clearly established law that is sufficiently related to the alleged constitutional violations at issue in this case. This failure alone "is fatal to [her] federal claims." *Bennett v. King County*, No. 24-2065, 2026 WL 41131, at *2 (W.D. Wash. Jan. 7, 2026).

Indeed, courts have "routinely held that officials are entitled to qualified immunity in similar challenges to public health orders because they were facing an 'unprecedented global pandemic,' for which there was little if any clearly established precedent." *Strandquist v. State Dep't of Soc. and Health Servs.*, No. 23-cv-5071, 2024 WL 4645146, at *7 (W.D. Wash. Oct. 31, 2024) (collecting cases), *reconsideration denied*, 2024 WL 4979859 (W.D. Wash. Dec. 4, 2024). In similar COVID-19 vaccine mandate contexts, courts have found officials are entitled to qualified immunity, based on failure to identify clearly established law, for every constitutional claim at issue in this case. *See, e.g.*, *Bennett*, 2026 WL 41131, at *3 (finding defendants are entitled to qualified immunity for free exercise, procedural due process, and equal protection claim); *Colombo v. State Dep't of Nat'l Res.*, No. 24-cv-5887, 2025 WL 1434903, at *3–4 (W.D. Wash. May 19, 2025) (same); *Wilkins*, 2024 WL 5200177, at *3 ("At the time the Administrators enforced the vaccine and mask mandates, there was no clearly established [substantive] due process right to refuse a vaccine or to wear a mask during a pandemic").

ORDER – 12

Because the Court finds Ms. Freniere fails to identify any clearly established right in support of her constitutional claims, it need not go any further to find that Mr. Harvill and Mr. Everett are entitled to qualified immunity on those claims. Nevertheless, for the sake of completeness, the Court will briefly address each constitutional claim at issue.

### ii.     Free Exercise

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones. v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 1031–32 (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)). Here, requiring Ms. LaFreniere to complete a religious exemption form did not substantially burden her religion. The form merely asked high-level questions about her religious objection so the District could conduct an individualized assessment as required by the Proclamation. *See* Dkt. # 63-8. Nothing in the record suggests the exemption form had the tendency to coerce Ms. LaFreniere to act in a way contrary to her religion. *See Campbell v. Bowser*, No. 22-cv-3422, 2025 WL 2779911, at *3 (D.D.C. Sept. 30, 2025) ("The requirement to engage with the school's exemption process and submit a completed exemption form is at most an inconsequential or *de minimis* burden on religious practice that would not implicate the First Amendment.") (internal quotation marks omitted).

### iii.     Procedural Due Process

"The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Under *Loudermill*, "[p]ublic employees are entitled to 'oral or written notice of the charges against [them]' and 'an opportunity to present [their] side of the story' before they are terminated." *Pilz v. Inslee*, No. 21-cv-5735, 2022 WL 1719172, at *7 (W.D. Wash. May 27. 2022)

ORDER – 13

(quoting *Loudermill*, 470 U.S. at 546). Assuming *Loudermill* applies to Ms. LaFreniere's termination, its requirements were easily satisfied. The District afforded Ms. LaFreniere substantial process and opportunity to respond prior to her termination. The District provided repeated notice to all employees that individuals who do not vaccinate or obtain an exemption will be terminated. Dkts. # 63-2, 63-3, 63-4. The District, through Mr. Harvill, also personally informed Ms. LaFreniere on multiple occasions that to qualify for an exemption, she must complete the District's exemption form and explain the reason she is seeking an exemption. Dkts. # 63-6, 63-7, 63-9. In total, the District considered two affidavits and two exemption forms submitted by Ms. LaFreniere, but none provided basic information regarding the nature of her religious objection to the vaccination requirement. Dkts. # 63-5, 63-8, 63-12. The District then held a *Loudermill* hearing "to get a clearer understanding of Ms. LaFreniere's position." Dkt. # 63 ¶ 18. These undisputed facts show the District did not violate Ms. LaFreniere's procedural due process rights. *See Gray v. State Dep't of Trans.*, No. 23-3278, 2024 WL 5001484, at *1 (9th Cir. Dec. 6, 2024) ("Even if *Loudermill* could be read as clearly established law with respect to the accommodation process, and we are doubtful that it can, Employees received as much notice and process as the law required" based on notice of the vaccination and exemption policy and pretermination opportunities to respond); *Bacon*, 2024 WL 3041850, at *2 (employees who received notice of the vaccination requirement, were offered the opportunity to participate in *Loudermill* hearings, and received the results of those hearings "were given all the process that was due."). Indeed, it is difficult to imagine what more process the District could have provided to Ms. LaFreniere under the circumstances.

### iv.    Equal Protection

A plaintiff asserting an equal protection claim "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). On the undisputed record, it is

ORDER – 14

abundantly clear that the District terminated Ms. LaFreniere because of her refusal to explain the nature of her religious objection to the vaccine mandate. *See, e.g.*, Dkt. # 63-6. The District granted "numerous" other employees' requests for religious exemption. Dkt. # 63 ¶ 21. Thus, it cannot be said that Defendants discriminated against Ms. LaFreniere based on her religious beliefs or any other protected characteristic.

### v.    Substantive Due Process

In *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), the Supreme Court "upheld a government vaccine mandate over objections about the vaccine's efficacy and safety." *Wilkins*, 2024 WL 5200177, at *3. "[S]ince the onset of the COVID-19 pandemic, numerous courts have rejected claims that COVID-19 vaccine mandates or mask mandates violate individuals' substantive due process rights . . . ." *Id.* (collecting cases). At minimum, the question of whether vaccine mandates violate individuals' substantive due process rights was not clearly established at the time the mandates went into place. *See id.* ("any purported due process right to refuse a vaccine or to wear a mask during the pandemic was not clearly established."); *Johnson v. Kotek*, No. 22-35624, 2024 WL 747022, at *3 (9th Cir. Feb. 23, 2024) ("At best, the validity of these vaccine mandates under the principles discussed in *Jacobson, Cruzan*, and related cases is debatable"), *cert. denied*, 145 S. Ct. 378 (2024). Based on the reasoning of *Wilkins* and *Johnson*, the Court finds the individual defendants are entitled to qualified immunity on this claim because there is no clearly established right at issue.

In her opposition, Ms. LaFreniere argues her substantive due process claim is "not limited to a 'right to refuse vaccination.'" Dkt. # 65 at 17. Instead, she appears to argue that her termination "shocks the conscience." *Id.* This argument is rejected. Requiring Ms. LaFreniere to complete an exemption form, as many other District employees did, does not shock the conscience.

In sum, § 1983 claims against Mr. Harvill and Mr. Everett in their individual capacity are dismissed based on qualified immunity.

ORDER – 15

**D.    Title VII Claim (Count 2)**

Title VII "proscribes discrimination in employment on the basis of race, color, religion, sex, or national origin." *Fort Bend County, Texas v. Davis*, 587 U.S. 541, 543 (2019) (citing 42 U.S.C. § 2000e–2(a)(1)). "As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission ['EEOC']." *Id.* (citing 42 U.S.C. § 2000e–5(e)(1), (f)(1)). It is undisputed that Ms. LaFreniere did not file a charge with the EEOC prior to commencing this lawsuit. *See* Dkt. # 65 at 13.

Ms. Lafreniere argues that the administrative exhaustion requirement should be excused based on equitable tolling, estoppel, and waiver. *Id.* Equitable tolling is available in "extreme cases" and "has been applied sparingly." *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992). "[T]he Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice of the statutory period was clearly inadequate." *Id.* at 267–68. "Courts have been generally unforgiving, however, when a late filing is due to claimant's failure 'to exercise due diligence in preserving his legal rights.'" *Id.* (quoting *Irwin v. Veterans Admin.*, 498 U.S. 89, 96 (1990)). The Court does not find this is the "extreme case" where equitable tolling should be applied. Ms. LaFreniere's only stated reason for failing to file an EEOC charge is that she is a pro se litigant and "may have been unaware" of the requirement. Dkt. # 65 at 13–14. This is not a sufficient justification, particularly at this late stage in the case. *Cf. Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1127 (9th Cir. 2007) ("[plaintiff's] pro se status does not afford her different treatment" under the Title VII statute of limitations standards). While Ms. LaFreniere also argues administrative exhaustion should be excused based on estoppel and waiver, she does not provide any support for these arguments. Accordingly, the Title VII claim is dismissed.

ORDER – 16

**E.    WLAD Claim (Count 6)**

"Washington's claim filing statute requires plaintiffs to give local government entities notice prior to filing suit for tortious conduct." *Reimer v. County of Snohomish*, No. 17-cv-384, 2018 WL 2183997, at *3 (W.D. Wash. May 11, 2018); *see* RCW 4.96.020. Again, it is undisputed that Ms. LaFreniere did not comply with this requirement. *See* Dkt. # 65 at 17.

Ms. LaFreniere argues "WLAD is not a tort statute subject to the tort claim filing requirement of RCW 4.96." Dkt. # 65 at 17. To the contrary, "Washington courts recognize WLAD claims as arising from tortious conduct, and therefore RCW 4.96.020's notice requirements apply." *Wong v. Seattle Sch. Dist. No. 1*, No. 16-cv-1774, 2018 WL 1035799, at *2 (W.D. Wash. Feb. 23, 2018).

Ms. LaFreniere also argues "substantial compliance or equitable estoppel may excuse non-compliance," and states Defendants had "extensive notice of Plaintiff's claims through three sworn Affidavits, the Loudermill hearing, and this litigation." Dkt. # 65 at 17–18. Equitable estoppel does not apply for the reasons discussed above. Moreover, Ms. LaFreniere did not substantially comply with the statute's requirement. Substantial compliance is met when parties follow a statute in a way that satisfies the "intent for which the statute was adopted." *Lee v. Metro Parks Tacoma*, 335 P.3d 1014, 1017 (Wash. Ct. App. 2014). "The purpose of claim filing statutes is to 'allow government entities time to investigate, evaluate, and settle claims.'" *Id.* (quoting *Medina v. Pub. Utility Dist. No. 1 of Benton Cty.*, 53 P.3d 993, 997 (2002)). Here, while Ms. LaFreniere notified the District of her objection to the vaccine exemption procedures, there is no indication she provided notice of her WLAD claim before filing suit. *See Reimer*, 2018 WL 2183997, at *3 (finding plaintiff did not comply with claim filing statute because plaintiff did not "satisfy the purpose of the claim filing statute: alerting the [Defendant] to Plaintiff's decision to sue."). Accordingly, the WLAD claim is dismissed as well.

ORDER – 17

### F.    Claim under the Washington Constitution (Count 7)

Finally, "Washington law contains no counterpart to 42 U.S.C. § 1983, and Washington courts reject invitations to establish a cause of action for damages based upon [Washington State] constitutional violations without the aid of augmentative legislation." *Lubers v. Hinson*, No. 23-cv-1396, 2024 WL 810552, at *2 (W.D. Wash. Feb. 27, 2024) (citing *Blinka v. Wash. State Bar Ass'n.*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001)). Ms. LaFreniere asserts a free exercise under the Washington Constitution. *See* Dkt. # 6 at 18. This claim is dismissed because there is no private right of action. *See Shirley v. State Dep't of Fish & Wildlife*, No. 23-cv-05077, 2025 WL 1360872, at *6 (W.D. Wash. May 9, 2025) (dismissing Washington constitutional claims, including free exercise claim), *reconsideration granted in part on other grounds*, 2025 WL 2165946 (W.D. Wash. May 23, 2025), appeal filed, 25-4763 (9th Cir. July 29, 2025).

### G.    Remaining Motions

Also pending before the Court are Plaintiff's Motion to Deem Requests for Admission Admitted, Dkt. # 72, and two motions to modify the scheduling order. Dkts. # 73, 76.

Under the Court's Order Setting Trial Date and Related Dates, Dkt. # 38, the deadline to file discovery motions was February 9, 2026. Ms. LaFreniere's Motion to Deem Requests for Admission Admitted was filed more than two months after this deadline, on April 13, 2026. The Court declines to consider this untimely motion and denied it for that reason.

Next, Ms. LaFreniere asks the Court to modify the scheduling order to reopen discovery, Dkt. # 73, and to "designate a rebuttal expert and to complete expert-related discovery," Dkt. # 76. "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Court does not find good cause to modify the scheduling order. The current scheduling order has been in place since June 4, 2025. Ms. LaFreniere provides no reason she could not have conducted appropriate discovery

ORDER – 18

within the time permitted.  Moreover, permitting additional discovery at this late stage— after the conclusion of summary judgment briefing and two months away from trial— would unduly prejudice Defendants.  Accordingly, the motions to modify the scheduling order are denied.

## V.    CONCLUSION

For the forgoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, Dkt. # 61, and **DISMISSES** all claims in this case.  The Court **DENIES** Plaintiff's Motion to Deem Requests for Admission Admitted, Dkt. # 72, Motion to Modify the Scheduling Order, Dkt. # 73, and Motion for Relief from Scheduling Order Deadlines, Dkt. # 76.

DATED this 13th day of May, 2026.

Richard A. Jones

The Honorable Richard A. Jones
United States District Judge

ORDER – 19